OXFORD STREET OXFORD STREET 12-12-18 SHERMAN & ASSOCIATES against Oxford Instruments SHERMAN & ASSOCIATES against Oxford Instruments Mr. Uriel, when you are ready. Thank you, Your Honor. May I please record? The first issue I want to address is the right to practice under the settlement agreement. In this case, ASM contends that the agreement did not grant Sherman the right to practice. Well isn't the basic point that Sherman transferred the patent, he signed the patent and all he has is a limited right to grant a sub-license so how does he have the right to sue? He doesn't have, he's not an owner, he doesn't have all substantial rights in the patent. He has two important rights. The right to practice and the right to exclude. He has the right to grant sub-licenses. He has the exclusive right to grant licenses in non-micro-electronic applications. Field of use. In that field of use, he can grant a license to himself or any related entity and he has the right to practice the inventions in that field of use. The district court so found in its order at page 5, line 7 to 8 the right to practice is very important in looking at a standing issue. There's no question about it. He has the right to practice. It's different than PROPAT where the plaintiff in that case specifically did not have the right to practice and PROPAT, the district court, so held in this court affirmed. There's a main distinction between the case before the court today and the case before the court in PROPAT. Right to practice. Dr. Sherman has the right to practice. He can exercise it whenever he chooses. Show me in the agreement where he has the right to practice, even assuming that is enough. Section 1D grants to Sherman a non-assignable, non-transferable worldwide exclusive right to grant sub-licenses I don't see right to practice. He can grant a sub-license to any entity to practice. But he didn't. He hasn't. But he has the right to. That's the distinction, Your Honor. He still doesn't own the patent. He doesn't own the patent. That's correct. He has the right to practice whenever he so chooses. He can do it today. He can do it tomorrow. He can do it at any time. And ASM has no right to object. They have no opportunity to consent or not. They don't have any say in the matter. And all he has to do is abide by the terms that a reasonable royalty get paid when he wants to practice. So he has the right to practice. And when he chooses it, it's up to him. He can exercise that right whenever possible. That's what distinguishes the case from PROPAT. The other issue is the right to exclude. Equally important in looking at a standing issue when someone other than the patent owner. And in PROPAT the right to exclude is a basic attribute of a patent. An owner of a patent doesn't even necessarily have the right to practice it because there may be other dominant rights outstanding. It's the right to exclude that counts. And the right to exclude, unlike, and I've looked at PROPAT several times. You keep mentioning PROPAT, but we have a long history of cases going all the way back to the Supreme Court's Waterman v. McKenzie case. This is not a new kind of concept. This case, just to deal with the right to exclude, because it is so important. In PROPAT, the agreement there, as far as I can tell from the opinion, is not an exclusive case. Here, there is no doubt that Dr. Sherman and Sherman Associates have the exclusive right to license in the field of use. That takes the case away from PROPAT and it brings it closer to a case cited in PROPAT before this Court, Intellectual Property Development v. PCI Cable Vision, the 2001 decision, 248 F. 3rd, 1333. And in that case, this Court held an agreement between a patentee and an exclusive licensee, like Dr. Sherman, with an allocation of rights nearly identical to those in the settlement agreement before the Court, conferred upon the exclusive licensee the right to sue on the patent as long as the patent owner was doing the suit. That's Intellectual Property 248 F. 3rd at 1345-47, cases discussed at length in PROPAT. And just like the case before the Court, the plaintiff in Intellectual Property case joined the patent owner after the case was filed. Same thing happens here. And this Court held that the requisite standing existed when an exclusive licensee first files an action for infringement. Intellectual Property is much closer to the case at bar, and PROPAT is not. There's not a right to practice in PROPAT. The key sentence in PROPAT is that PROPAT lacks important indicia of a true ownership interest in the patent. And that's what's lacking here, too. The right to practice is not present in PROPAT, the Court so found. This Court affirmed. The right to practice is present in this case. That is an important distinction. Just as important is the right to exclude. That is nowhere in the bundle of rights given to the PROPAT licensee. So the patent, the licensee in PROPAT, the plaintiff, had neither the right to practice the invention nor the right to exclude others from practicing it. The patent owner could do that. So the PROPAT plaintiff did not have the requisite standing. Both of those important rights are present in this case. This Court found one of them. The right to practice was present, and that's correct. The right to exclude is also present here. I'd like to reserve some time. Okay. Thank you, Mr. Uriel. We'll hear from Mr. Buncho. May it please the Court. Good morning. Let me start with the last point about the right to practice. First of all, even if Sherman were to decide to grant himself a sub-license, the fact of the matter is he hasn't done that. Is it accurate that he has what would generally be called an exclusive field of use license? No. Absolutely not. He has no license whatsoever. And when you look at the settlement agreement, you see that there is no license grant language at all. Let's use the word right for the settlement agreement. He has a right to grant sub-licenses in a particular field of use at the moment. The exclusive right. Is that right? The exclusive right with the exception that the settlement agreement also grants a sub-license at the time of execution to ASM. So it's called an exclusive license, but the fact of the matter is that ASM is a licensee under the settlement agreement. So, but for the patent holder, he has now an exclusive field of use right? Is that accurate? He has... I don't believe that is accurate. What he has is an exclusive right to grant sub-licenses. Does he have a license himself? On a non-exclusive basis, yes. And that's the fallacy of this whole license, this whole argument. Let's just stick to the point of what his exclusive rights are. And I still haven't heard you tell me that he does not have an exclusive field of use right of some sort. That's because at the time that this settlement agreement was entered into, ASM became a sub-licensee in the same field of use, non-microelectronic... Okay, so my next question is that here, alright, so Sherman has some exclusive right to do something. We haven't come to agreement as to what that is, but he has received through the settlement agreement the exclusive right to do something. He is now trying to enforce that exclusive right, and his partner in the settlement agreement says, well I'm not going to help you, and you can't do it without me. Therefore, he no longer has an exclusive field of use right. Is that correct? Because someone else is practicing in the field of use, and his partner to this contract has said that they will do what the law says one must do to sue on a patent. Is that correct? That's absolutely correct, and there's a very good reason for that. You don't find that offensive or unfair? Absolutely not, because patent rights are a bundle of rights. They're a comprehensive bundle of rights. ASM became the owner of these patents after a long history of disputes with Dr. Sherman. There's a reference to the 2000 settlement agreement. We have a settlement agreement. That's what we're trying to decipher. Absolutely. And the settlement agreement gave Sherman certain exclusive rights, which he is as far as I can tell, and in this case, precluded from enforcing because his contracting partner in the settlement agreement doesn't like it. He's precluded from enforcing if ASM doesn't believe that it's appropriate to enforce because as part of this arrangement, Sherman agreed that ASM would be the sole enforcement arm not only for the ASM's reserve rights. Is that in the contract? Yes. It is in the settlement agreement. That only ASM can enforce the patent? Absolutely. Including the exclusive COW? Absolutely, Your Honor. ASM is the owner of the patent, right? That's correct. ASM is the owner of the patent. This isn't a question of whether Dr. Sherman has the right of use. This is a question whether he has the right to sue, whether he's the potential owner of the patent. Correct. I'd say the question is whether he has the exclusive right of use as provided in the contract. He has no right of use, per se. And he doesn't have an exclusive right because he had already granted a sub-license to ASM. So the best right that he could do, if he took all his bundle of rights, whatever those are, and granted them to himself and agreed never to grant a license to anybody else, he would still be a non-exclusive sub-licensee. And a non-exclusive sub-licensee always falls in the third category of potential plaintiffs, and that category precludes a non-exclusive licensee from suing. That's been the historical law forever. So granted the agreement of that exclusive field of use license, he should have known that it didn't mean it? I don't know what he'd do or not. I know that he had counsel at the time this agreement was entered into. You look at the last page and it was approved as a form. What Sherman could do is provide a shield against an action by ASM against any sub-licensee that Sherman wanted to sub-license. So somebody in the non-microelectronics field, you assume people take licenses because they want to use the technology. Granted that enforcement is the way you force them to do that. Sherman has the right to prevent ASM from doing that. Now remember, ASM shares in those sub-licenses, so there is an inherent reason why ASM would be interested in enforcing against potential sub-licensees. Sherman has the ability to prevent that by granting a sub-license. That's what this was all about. That's why it was structured this way. ASM has historically been the enforcement arm, going back to the 2000 agreement. The paragraph is at appendix A28, is paragraph G, where it explicitly, Sherman explicitly agrees to cooperate with ASM in any enforcement action relating to these patents. So we have a situation here in which Sherman was granted a valuable right, the right to protect against an enforcement action by ASM, but conversely, given the history of the parties, ASM wanted to control whether or not Sherman would interfere with its own activities. And that's really what this case is all about. There's a dispute over whether Oxford is practicing outside the microelectronics field or not. Obviously we don't feel they are. And that is exactly why it was structured this way. Sherman was paid a substantial amount of money, given a consulting agreement. You say that their refusal to participate in the proposed litigation against Oxford was because you thought that they weren't infringing the patent. ASM. In the field of use that it had exclusively assigned, but I don't see that in the record. You're saying that there was a sound reason for not permitting the exclusive rights to be somehow... I think you can assume from the record... I don't want to assume. We're not finding the facts of what you just said is not familiar as a finding. That's correct. You are right. So what provisions of the settlement agreement do you say resolve this? You were about to direct our attention to some provisions of the settlement agreement. I guess it's A26 that starts at A25. That's a pertinent agreement, correct? That's correct. And what are the provisions in there that you say compel the result that the district court reached? Well, first of all, if you look at paragraph 1c that is on A27, Sherman agrees and hereby irrevocably assigns to ASM all rights, title, and interests in and to all Sherman patents. That's an absolute assignment of the entire bundle of rights. If we stop there, I don't think we have any question at all. But you can look at paragraph D. ASM grants Sherman a non-exclusive, non-transferable, worldwide exclusive right so that there are qualifications. Yes, and so if we gave back to Sherman the right to license others on a non-exclusive basis, a sub-licensed right to grant to others. By doing that, in paragraph D, Does the paragraph say non-exclusive? It says to grant sub-licenses in other fields of use. Paragraph C is a grant to ASM of those same rights. So if Sherman granted somebody else a license, it would necessarily be a non-exclusive license. Exclusive except for the patent holder. Correct. Correct. So you have a when you look at the document, you have ASM, even after paragraph D, still owning all right, title, and interest to the patent. You have no explicit grant to Sherman of an exclusive right in the field of use. What you have to grant to Sherman is the right to grant non-exclusive sub-licenses in the field of use. So accepting that Sherman does not have the all substantial rights that our cases say one must have to sue on a patent by joining the holders of the remaining rights as a party plaintiff or party defendant, doesn't that solve the question? No, it does not. And the PROPAT case is directly on point here. There's a trilogy of recent cases that this really falls directly into. It's the Morrill case of 2010, the PROPAT case of 2011, and the Permatek II case, which was about 2000. The PROPAT case is really indistinguishable from this case, and I know your Honor was on the panel in the PROPAT case. What that case says is that absent the grant of rights to exclude remember we're talking about the right to exclude. When you sue somebody you exclude them from practicing the invention. That really distinguishes these facts, does it not? I beg your pardon? Doesn't that distinguish these facts? Here he was granted the right to exclude. No, Sherman was granted no right to exclude. Sherman was granted the right to include people in a license that would prevent ASM from excluding them. You have to read paragraphs C and D together. Paragraph C gives the whole bundle of rights to ASM. ASM has the right to enforce. That's clear from paragraph G as well. ASM is the arm that has the right to enforce. All Sherman is granted is the right to provide a shield against that enforcement by granting a non-exclusive sub-license. That's all Sherman got. Sherman got no right to exclude itself. I would think that there must be many thousands or hundreds of thousands of licenses that grant an exclusive right where both sides think that they granted the right to exclude. Well, those licenses that grant an exclusive right to use, make, make use, or sell, that put the licensee as an exclusive licensee to make use or sell, you would be right. That's the second category of licensee in the PROPAT Moro decisions, where that licensee as the exclusive holder of the rights to use can then enforce, oftentimes alone, oftentimes by joining the patent owner. But that is not the situation here. There's no grant of any right to exclude here. What's the significance of paragraph E on page 27? Paragraph E is the ASM. ASM, I think the record should reflect, is a manufacturer of equipment. So, this gives ASM the right to sell equipment for use in the non-microelectronic area. That is the area that Sherman also has the rights to grant sub-licenses in. Exclusive. But he granted it to ASM. So, it's not exclusive. That's the point. It's exclusive as to future sub-licensees, which makes Sherman at best a non-exclusive sub-licensee. That's the problem, because it says exclusive, and I do appreciate what you're saying, that they didn't quite get, perhaps, what this says, for whatever reason. It doesn't say a non-exclusive, it doesn't say an exclusive license either. You don't see the word license anywhere in paragraph E. Well, he's not a manufacturer. That's correct. He's an individual. Exactly. And that's why he was not granted any right to use. And that is the touchstone on whether you have a right to exclude. You must have a right to use, or there is no injury in fact. But he can grant a sub-license to use. There are lines here that I misread. Well, he can grant a sub-license to use, but then he would still be a non-exclusive licensee. And that's the third category of licensee that, under no circumstances, has the right to enforce the patent in their own right. Okay. Any more questions? All right. Thank you. Thank you. Under Section 1G, Sherman has the exclusive right to grant sub-licensees. He's an exclusive licensee. It's not a right to grant exclusive sub-licenses. It's the exclusive right to sub-license in the field. And he can license himself, or if there's a court so found, and he has the right to practice. And the license in 1E that counsel was questioning about was necessary to permit ASM to practice in the field of use of non-microelectronic applications. And when an exclusive licensee grants a license, he does not become a non-exclusive licensee. That's exactly what an exclusive licensee can do. He can grant a license to whomever he chooses. He chose to grant it to ASM. That was his right. And ASM recognized that they needed it. Because if they didn't have that right, Dr. Sherman could enforce the patent in that field of use against them. So they asked for it. He granted it. And that by itself demonstrates his right to exclude. Otherwise they wouldn't have needed that provision at all. They're the ones who asked for it. They're the ones who were granted it. It's just like Dr. Sherman granted it to any other third party. It's his right to do so as an exclusive licensee. That's what makes this case different than PROPAT and much more similar to the case of Intellectual Property v. DCI. Okay, so accepting this reasoning, I don't see anywhere in the agreement that there is a right to sue on the patent or an offer by ASM. That is the corollary of the paragraph which says that Sherman will cooperate in any litigation brought by ASM. That's right. Section 1G is what Ron is referring to. And it says that Sherman will cooperate and assist ASM in litigation and in patent prosecution. But it does not say who can initiate litigation or who cannot initiate litigation. Some contracts and PROPAT was one of them, have that issue taken care of. In PROPAT, I believe the case was the licensee could pick someone that it wished to initiate litigation and the patent owner had the right to approve. There's no such language in this contract. And ASM is trying to rewrite the contract to give it a veto over any litigation. 1G does not have that provision in it. But it does seem as if he can't sue without ASM as now the nominal patent holder being a part, in some words, to the suit. Reluctant or not. That's true. In this case, an exclusive licensee under precedent in this court needs to join with a patent owner either cooperatively or non-cooperatively. That brings it under the second category of cases where the patent owner has to be joined. The patent owner was joined in this case and the TCI Cablevision case says that that is sufficient for standing purposes. I'm not so sure that our precedent authorizes a sub-licensee or even an exclusive sub-licensee to force the patentee to participate. The patent owner did not cooperate with the case. The case was followed by the exclusive licensee alone without the patent owners being a party. He was joined later against his wishes, which is exactly the case that we have here. And the court held that the requisite standing existed when the exclusive licensee first filed the action. And when you join a patent owner, in this case ASM is invited to join as a plaintiff and declined, but if they decline and you join them as a defendant, a party defendant later on, standing is present at the time the case was filed. That's the holding in the intellectual property. And that's controlling in the case before us here. Okay. Any more questions for Ms. DiOrio? Any questions? Thank you Ms. DiOrio and Mr. Banzo. The case is taken under submission.